| | |
|---|---|
| BRAD REED and TARA REED, individually and as Joint Limited Conservators of IR, a minor, | CIV. 17-5047-JLV |
| Plaintiffs, | ORDER |
| vs. | |
| UNION RESORT, LLC d/b/a MYSTIC MINER, | |
| Defendant. | |

## INTRODUCTION

This case concerns liability for an injury suffered by plaintiffs' minor daughter, I.R., during a snow tubing excursion. Plaintiffs allege claims of ordinary and gross negligence against defendant, the resort at which I.R. was injured. (Docket 16). Defendant now moves for summary judgment on both claims. (Docket 21). It asserts plaintiffs signed an exculpatory release barring its negligence claim, that the gross negligence claim is insufficient as a matter of law, and that both claims are barred because plaintiffs assumed the risk of injury to I.R. (Docket 23). Plaintiffs resist the motion in part, conceding that their negligence claim is barred but arguing fact questions for a jury exist regarding their gross negligence claim and defendant's assumption of the risk defense. (Docket 30).

Defendant's summary judgment motion was referred to Magistrate Judge Veronica L. Duffy pursuant to the court's standing order of October 16, 2014, and 28 U.S.C. § 636(b)(1) for a report and recommendation ("R&R"). The magistrate judge issued an R&R concluding summary judgment should be granted on plaintiffs' negligence claim and denied on their gross negligence claim. (Docket 43). Defendant timely objected to the R&R and plaintiffs filed a response to the objections. (Dockets 46 & 47).

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files written objections to the magistrate judge's proposed findings and recommendations, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. For the reasons given below, the court grants defendant's motion for summary judgment as to plaintiffs' ordinary negligence claim and denies it as to their gross negligence claim. The court adopts the R&R to the extent it is consistent with this order.

## ANALYSIS

### I.  Facts

The following recitation consists of the material facts developed from the amended complaint (Docket 16), defendant's answer (Docket 17), defendant's statement of undisputed material facts (Docket 22), plaintiffs' response to those

facts (Docket 31), and other evidence in the record where indicated.   These facts

are "viewed in the light most favorable to the [party] opposing the motion."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The facts material to defendant's motion for summary judgment are as follows.

Plaintiffs and their children visited defendant's resort[1] near Lead, South

Dakota, on March 13, 2015, "for an afternoon of recreational snow tubing."

(Docket 31 at ¶ 1).   At the time, plaintiffs' youngest child, I.R., was seven years

old.   Id. at ¶ 3.   Plaintiffs signed a written release of liability for each of their

children, including I.R., before snow tubing.   Id. at ¶¶ 8-9.   By signing the

release, plaintiffs agreed that snow tubing is "extremely hazardous" and can

cause "personal injury and/or death."   (Docket 27-2 at p. 1).   They affirmed

they made the "voluntary choice to participate in tubing" and allowed their

children "to do so despite the risks[.]"   Id.   They accepted "the full responsibility

for any and all . . . damages or injury of any kind which may result[.]"   Id.

Finally, they

> fully release[d] [defendant] . . . from any and all liability for personal
> injury . . . which results in any way from . . . my child(ren)'s
> participation . . . including any caused by negligence . . . including,
> but not limited to . . . lift operations while loading or unloading,
> other tubers, employees working lanes . . . or any other activities
> related to tubing[.]

---

[1]The parties refer to the resort at issue as "Deer Mountain" or occasionally
as "Mystic Miner."   It is uncertain what the resort's current name is.   To avoid
confusion, the magistrate judge referred to the facility as the "resort."   (Docket
43 at p. 2 n.1).   The court adopts this nomenclature.

Id. Plaintiffs knew they agreed to release defendant from liability by signing the document. (Docket 31 at ¶¶ 10, 12). They also knew allowing I.R. to snow tube could result in injury. Id. at ¶ 16.

Plaintiffs and their children each selected their own snow tubes from a pile maintained by defendant. Id. at ¶ 23. They would swap the tubes among themselves for each run down the tubing slope. Id. at ¶ 25. Plaintiffs testified during their depositions I.R. used a tube with a tear or hole in the bottom for the run during which she was injured. (Dockets 27-1 at p. 15 & 27-4 at p. 4). Employees testified they left torn tubes in the resort's inventory because they believed the torn tubes provided a safer ride for children, due to the tubes' tendency to move slowly down the slope. (Docket 31 at ¶ 54). They knew torn tubes could sometimes come to a stop mid-slope. (Dockets 33-1 at pp. 6-7 & 27-11 at p. 3).

Plaintiffs recall seeing a resort employee on the top of the hill used for tubing on two occasions before the accident. (Docket 31 at ¶ 27). However, neither that employee nor any other managed the flow of tubers down the slope. Id. at ¶ 20. The management process is referred to as "staging." (Docket 43 at p. 4). Because no employee was staging the tube runs, some tubers were going down the slope before the previous tuber had completed their run. (Docket 27-5 at p. 7). Plaintiff Brad Reed described the slope as a "free-for-all." Id.

I.R., using the torn tube, came to a stop during her final run approximately three-fourths of the way down the slope. (Docket 31 at ¶ 37). Another tuber in

4

plaintiffs' party, a social worker from the Philippines named Alex, began her run down the same lane as I.R. while I.R. was stopped on the slope.   Id. at ¶¶ 4, 38. No resort employee directed Alex to begin her run while I.R. was still on the slope. Id. at ¶ 40.   Alex collided with I.R., causing I.R. serious head injuries.   Id. at ¶ 39; Docket 16 at ¶¶ 13-14.   Plaintiff Tara Reed testified she found I.R.'s tube was "full of snow" after the accident.   (Docket 27-1 at pp. 15-16).   She believed the snow in the tube caused I.R. to stop mid-slope.   Id. at p. 16.

Plaintiffs, pointing to deposition testimony by resort employees, assert the resort was "chronically understaffed."[2]   (Docket 31 at p. 17) (citing Dockets 33-8 at p. 2, 33-5 at p. 4 & 33-4 at pp. 2-3).   An employee testified that a manager would assign the resort's limited staff to different locations each day as justified by staff availability.   (Docket 33-5 at p. 5).   The tubing hill generally required three employees: one at the bottom of the hill who would hook the tubes onto a lift mechanism that transported them up the hill, and two at the top of the hill, one for staging and one for unloading tubes from the lift mechanism.   Id. at pp. 5-6; Docket 33-4 at pp. 2-3.   An employee testified resort management prioritized stationing an employee at the bottom of the tubing slope.   (Docket 33-4 at p. 5).

---

[2]Plaintiffs make this and other assertions in a section of their response to defendant's statement of undisputed material facts titled "additional facts."   See Docket 31 at pp. 16-17.   Defendant did not reply to these additional facts.   The court does not consider them uncontested, but instead weighs them according to the strength of the record evidence cited in their support.

Defendant provided incident reports from the winter seasons between 2010 and 2015 (except for the 2013-2014 season, for which records were not available) to its expert, James Engle.   (Docket 26-2 at pp. 7-8).   The records showed 72 tubing incidents during those seasons, with 17 recording a collision between tubers.   Id. at p. 7; Docket 31 at ¶ 55.   Only one incident involved a mid-slope collision.   Id.   Plaintiffs note the incident reports show five tuber collisions within a few weeks of I.R.'s accident.   (Docket 31 at ¶ 31).   The magistrate judge astutely noted neither party contextualized the incident report evidence.   (Docket 43 at pp. 13-14).   The record does not show how many tubers in total used the slope during the time documented by the incident reports, what criteria defendant used to determine the types of incidents necessitating a report, or whether defendant diligently documented all incidents.[3]   Id.

## II.    Defendant's Objections

Defendant raises six objections to the R&R.   (Docket 46).   Five of the objections relate to the magistrate judge's recommendation that summary judgment should be denied as to plaintiffs' gross negligence claim.   Id. at

---

[3]In its objections to the R&R, defendant states there is no specific data as to the total number of tubers over the period documented in the incident reports. (Docket 46 at p. 6).   It requests to supplement the record on this point.   Id.   As described below, the court rejects the assumption a statistical analysis is necessary to determine whether summary judgment is appropriate on plaintiffs' gross negligence claim.   See Section III.B.4.   Further evidence as to the total number of tubers is unnecessary.

pp. 1-10.  As summarized by the court, the objections contend the magistrate

judge erred by:

1.   Concluding plaintiffs established a genuine issue of fact as to
     whether defendant knew injury to I.R. was probable.   <u>Id.</u> at
     pp. 2-3.

2.   Concluding plaintiffs established a genuine issue of fact as to
     whether the risk of harm posed by defendant's negligence was
     of a sufficient magnitude.   <u>Id.</u> at pp. 4-5.

3.   Failing to address the lack of evidence regarding "the
     probability of the precise result"—i.e., I.R.'s injury.   <u>Id.</u> at
     p. 5.

4.   Concluding plaintiffs established a genuine issue of fact as to
     whether I.R.'s injury was probable.   <u>Id.</u> at pp. 6-7.

5.   Concluding lack of a staging employee is sufficient evidence to
     support plaintiffs' gross negligence claim.   <u>Id.</u> at pp. 8-10.

6.   Failing to conclude deposition evidence establish plaintiffs
     assumed the risk of I.R.'s injury.   <u>Id.</u> at pp. 10-12.

The court addresses each objection in turn.

## III.   Discussion

### A.   Legal standards

This case is before the court on its diversity jurisdiction.   (Docket 16 at

¶¶ 2-5).   Accordingly, South Dakota substantive law governs.   <u>Hammons v.

Hartford Fire Ins. Co.</u>, 501 F.3d 991, 996 n.6 (8th Cir. 2007).

### 1.   Summary judgment

Under Federal Rule of Civil Procedure 56(a), a movant is entitled to

summary judgment if the movant can "show that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).   Once the moving party meets its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).   Only disputes over facts which might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Id. at 248.   "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate.   Id.   However, the moving party is entitled to judgment as a matter of law if the nonmoving party failed to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."   Id. at 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party.   Matsushita, 475 U.S. at 587-88.   The key inquiry is

8

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson</u>, 477 U.S. at 251-52.

### 2. Release of liability & gross negligence

In general, a release of liability is valid "absent a legislative directive . . . that they are contrary to public policy." <u>Holzer v. Dakota Speedway, Inc.</u>, 610 N.W.2d 787, 792 (S.D. 2000) (citing <u>Lee v. Beauchene</u>, 337 N.W.2d 827, 828 (S.D. 1983)). "However, releases that are construed to cover willful negligence or intentional torts are not valid and are against public policy." <u>Id.</u> at 793 (citation omitted).

"In South Dakota, the phrases *gross negligence* and *willful or wanton misconduct* mean the same thing." <u>Fischer v. City of Sioux Falls</u>, 919 N.W.2d 211, 215 (S.D. 2018) (emphasis in original). "These phrases refer to a category of tort that is 'different in kind and characteristics' than negligence." <u>Id.</u> (quoting <u>Tranby v. Brodock</u>, 348 N.W.2d 458, 461 (S.D. 1984)). "[F]or conduct to be willful or wanton, the risk involved must be substantially greater than that which is necessary to make the conduct negligent. . . . And the harm threatened must be an easily perceptible danger of death or substantial physical harm." <u>Id.</u> (quotations and citations omitted). "The conduct must be more than mere mistake, inadvertence, or inattention." <u>Gabriel v. Bauman</u>, 847 N.W.2d 537, 543 (S.D. 2014).

"[R]eckless, willful, or wanton misconduct entails a mental element. The defendant must *know or have reason to know* of the risk and must in addition proceed without concern for the safety of others[.]" Fischer, 919 N.W.2d at 215 (quotation and citation omitted) (emphasis in original). "Conduct is gross, willful, wanton, or reckless when a person acts or fails to act, with a conscious realization that injury is a probable, as distinguished from a *possible* (ordinary negligence), result of such conduct." Gabriel, 847 N.W.2d at 541 (quotation and citation omitted) (emphasis in original). "There need not be an affirmative wish to injure another, but, instead, a willingness to injury another." Id. at 543. "[W]hile willful and wanton misconduct is not identical to intentional conduct, willful and wanton misconduct does partake to some appreciable extent of the nature of a deliberate and intentional wrong. Fischer, 919 N.W.2d at 215 (quotations and citations omitted).

"Because willfulness, wantonness, or recklessness 'is almost never admitted, and can be proved only by the conduct and the circumstances, an objective standard must of necessity in practice be applied.'" Gabriel, 847 N.W.2d at 542-43. "Whether one acts willfully, wantonly, or recklessly is, like negligence, normally a jury question." Id. at 542. "On the other hand," the South Dakota Supreme Court urges against "draw[ing] the line of willful, wanton, or reckless conduct too near to that constituting negligent conduct[.]" Id. at 543.

10

### 3. Assumption of risk

"Assumption of the risk requires that the person: '(1) had actual or constructive knowledge of the risk; (2) appreciated its character; and (3) voluntarily accepted the risk, with the time, knowledge, and experience to make an intelligent choice.'" Jensen v. Menard, Inc., 907 N.W.2d 816, 820 (S.D. 2018) (quoting Duda v. Phatty McGees, Inc., 758 N.W.2d 754, 758 (S.D. 2008)).

> Knowledge of the risk is the watchword of assumption of risk. Indeed, assumption of the risk imports a knowing and voluntary self exposure to a known danger. Plaintiffs cannot assume risks of activities or conditions of which they are ignorant. They must not only know of the facts which create the danger, but they must comprehend and appreciate the danger itself. The standard to be applied is a subjective one, of what the particular plaintiff in fact sees, knows, understands and appreciates. In this it differs from the objective standard which is applied to contributory negligence

Duda, 758 N.W.2d at 758 (quotations and citations omitted). "Questions of negligence, contributory negligence, and assumption of the risk are for the jury in all but the rarest of cases so long as there is evidence to support the issues." Stensland v. Harding Cty., 872 N.W.2d 92, 96-97 (S.D. 2015) (quoting Janis v. Nash Finch Co., 780 N.W.2d 497, 500 (S.D. 2010)).

### B. Gross negligence objections

### 1. Defendant's knowledge of probable harm to I.R.

Plaintiffs assert defendant knowingly provided torn tubes to guests and understaffed the resort, resulting in the lack of a staging employee for the tubing slope, which in turn caused I.R.'s injury. The magistrate judge concluded these

assertions shepherded plaintiffs' gross negligence claim through summary judgment. (Docket 43 at pp. 12-17). Defendant objects, contending the record shows "a complete absence of evidence to suggest that Union Resort knew or should have known that I.R. was using a tore tube" and that resort employees believed torn tubes "offered a *safer* tuber experience, especially for young children[.]" (Docket 46 at p. 3) (emphasis in original). In defendant's view, these facts show it did not know there was any probability of I.R.'s injury.

Defendant's first argument, that it neither knew or should have known I.R. used a torn tube, is belied by resort employees' testimony. Employees left torn tubes in inventory "because they are great for little kids. They go super slow." Docket 27-10 at p. 5; <u>see</u> <u>also</u> Docket 33-4 at p. 9 (torn tubes left "in rotation specifically because they were kind of torn up[.]"); Docket 33-3 at p. 6 ("[W]e actually liked them with the ones that were broken, sort of say, or ripped."). If defendant is arguing it had no knowledge that I.R. specifically—as opposed to tubing guests in the abstract—was using a torn tube, the argument is unavailing. The knowledge element of a gross negligence claim is not so restrictive. <u>See</u> <u>Fischer</u>, 919 N.W.2d at 215 ("The defendant must *know or have reason to know* of the risk[.]") (emphasis in original). Defendant intentionally provided torn tubes to guests. It had ample reason to know I.R. would have used a torn tube.

Defendant next contends its employees' belief that torn tubes were safer immunizes it from the charge it knew I.R. could be injured. (Docket 46 at p. 3)

12

(citing Gabriel, 847 N.W.2d at 543 ("The conduct must be more than mere mistake, inadvertence, or inattention.")). Again, this argument is contradicted by employee testimony. Employees knew torn tubes could get stuck mid-slope. (Dockets 33-3 at pp. 6-7 & 27-11 at p. 3). They knew that collisions between tubers on the slope occurred. In fact, at least five such collisions occurred during the 2014-2015 winter season. (Docket 31 at ¶ 55). Finally, employees also knew such collisions could be dangerous, especially for small children. (Docket 27-8 at p. 4) ("Or if there was a little child – because if you're 50 pounds and you can't make it all the way down the end, you're going to be in trouble[.]"). Employees' belief that torn tubes were safer may have been mistaken, but they consciously knew children using torn tubes could get stuck mid-slope and become vulnerable to collision. These facts are more than sufficient to establish a genuine dispute of material fact as to whether defendant knew or had reason to know of a probability I.R. would be involved in a mid-slope tube collision. Defendant's first objection is overruled.

### 2. Magnitude of the risk of harm

Defendant argues the magistrate judge "improperly shift[ed] the burden of proof" by concluding plaintiffs established the risk of harm was of a sufficient magnitude to state a gross negligence claim. (Docket 46 at p. 5). The magistrate judge noted "[n]either party sp[oke] to the magnitude" of the risk of harm in their summary judgment briefing. (Docket 43 at p. 13). Nevertheless, because the record contained uncontradicted evidence of prior collisions and

13

because the harm from I.R.'s collision was severe, the magistrate judge "infer[red] that previous accidents were sufficiently severe in nature to satisfy the standard required for gross negligence." Id. Defendant takes exception to this inference.

"[F]or conduct to be willful or wanton, the risk involved must be substantially greater than that which is necessary to make the conduct negligent. . . . And the harm threatened must be an easily perceptible danger of death or substantial physical harm." Fischer, 919 N.W.2d at 215 (quotations and citations omitted). The court easily concludes the record presents a genuine issue of material fact as to whether defendant created a risk a tubing guest would be seriously injured in a mid-slope collision.[4] As noted above, resort employees were aware torn tubes could stop on the slope, potentially leading to collisions. See supra Section III.B.1. Employees also testified to the speed tubers could achieve going down the slope, potentially up to 35 miles per hour. (Dockets 27-8 at p. 2 & 33-4 at p. 10). The "danger of death or substantial physical harm" is "easily perceptible" when the potential exists for a tuber going 35 miles per hour to collide with a small child stuck in a torn tube on the slope. Fischer, 919 N.W.2d at 215. Accordingly, the court overrules defendant's second objection.

_____

[4]The magistrate judge was correct to draw all inferences in favor of plaintiffs, the non-moving party. Matsushita, 475 U.S. at 587-88. However, the court disagrees with the magistrate judge's assumption that evidence of the harshness of prior collision injuries is necessary to establish the risk of harm may constitute gross negligence. Uncontradicted facts in the record suffice to create a genuine dispute of material fact on this point.

### 3.    Probability of the precise result

Defendant argues there is no evidence the " 'precise result' that occurred in this case had ever actually occurred prior to" I.R.'s injury.   (Docket 46 at p. 5). In defendant's view, there is no evidence of any prior mid-slope collisions caused by torn tubes, although it concedes one prior mid-slope collision and that collisions occurred at other positions on the slope.   Id.; see also Docket 31 at ¶ 55.   It asserts the magistrate judge erred in failing to consider this lack of evidence.   Id.   Defendant's argument rests on two flawed premises.

First, defendant construes the term "precise result" too narrowly.   It quotes the term from a 1954 South Dakota Supreme Court decision which concluded no wanton and willful misconduct existed when the defendant there collided with a car that turned into his path.   Gunderson v. Sopiwnik, 66 N.W.2d 510, 511-13 (S.D. 1954).   Gunderson did not specifically analyze the "precise result" language, nor has defendant identified any subsequent authority counseling courts to read that language narrowly.   In fact, the South Dakota Supreme Court's latest opinion on gross negligence cites the "precise result" language only in dissent without any analysis.   Fischer, 919 N.W.2d at 219. Without clearer authority from South Dakota courts holding the term "precise result" should be narrowly construed, the court concludes it need not be read so strictly as to require evidence of prior mid-slope, torn tube collisions.

Second, defendant confuses sufficient and necessary conditions by assuming specific evidence of prior injuries is necessary to establish its actions

15

created a risk of probable injury. Such evidence is sufficient but by no means necessary to establish this element of gross negligence. Plaintiffs certainly could prove their case with evidence that prior tubing collisions establish defendant knew allowing guests to use torn tubes would result in mid-slope collisions. However, plaintiffs' theory of the case is that defendant created a risk of probable injury by providing guests torn tubes with a tendency to stop mid-slope and deliberately failing to provide staging at the tubing slope. (Docket 47 at pp. 3-4). Plaintiffs would presumably support their theory with evidence resort employees knew the torn tubes and lack of staging would result in mid-slope collisions, as opposed to evidence that such collisions had occurred in the past. Defendant points to no authority that plaintiffs' method of establishing this element is impermissible as a matter of law. In fact, accepting defendant's theory would create the anomalous result that novel injuries could never constitute gross negligence, no matter the surrounding circumstances. The court declines to create a new barrier to gross negligence claims unsupported by South Dakota case law. Defendant's third objection is overruled.

### 4.  Probability of I.R.'s injury

Defendant asserts the magistrate judge erred in making an inference in plaintiffs' favor regarding the probability of I.R.'s injury. (Docket 46 at pp. 6-7). The magistrate judge noted neither party introduced evidence regarding the total number of tubers over the period documented in defendant's incident reports.

16

(Docket 43 at pp. 13-14). She did not explicitly state she inferred such evidence would show a statistical probability of injury—that is, more than a 50 percent likelihood of injury—but instead generally concluded the gross negligence claim should proceed to trial. Id. at pp. 16-17. Defendant argues plaintiff Brad Reed's estimation that 100 tubers were present the day of I.R.'s injury, if extrapolated over the winter season, amply demonstrates there were sufficient tubers to make a statistical calculation resulting in less than a 50 percent likelihood of injury. (Docket 46 at pp. 6-7). The court rejects the premise that a statistical calculation is necessary for plaintiffs' claim to survive summary judgment.

South Dakota law requires a plaintiff alleging gross negligence to "prove a substantial probability of serious physical harm," as opposed to a mere possibility of harm. Fischer, 919 N.W.2d at 215. The probability of serious harm must be "substantially greater than that required for ordinary negligence[.]" Id. at 216. The magistrate judge and defendant both attempt to ascertain the probability of harm in mathematical terms with reference to the tubing slope accident rate. For example, the magistrate judge noted the 17 tuber collisions defendant catalogued could be viewed in different ways depending on whether there were 5,000 or 500 tubers over the time in question. (Docket 43 at pp. 13-14). Defendant seizes on this language to assert plaintiffs cannot establish a mid-slope tuber collision was anything more than "a mere possibility" because of the large number of tubers. (Docket 46 at p. 7).

The magistrate judge did not err in using statistical analysis as an example of one method to prove I.R.'s injury was a probable outcome of defendant's conduct. However, the court cannot discern from South Dakota law a *requirement* that probability be established mathematically. Plaintiffs certainly must prove defendant's conduct would, more likely than not, have resulted in I.R.'s injury, but that proof need not be strictly statistical. Plaintiffs need not calculate the total number of tubers using defendant's resort over a period of time and show a majority of them experienced slope collisions. Such a requirement would immunize defendant from any gross negligence claims as long as only 49 percent of tubers collided with one another, regardless of the severity of harm inflicted. It would also create a barrier to recovery for gross negligence claims based on novel injuries. Defendant cannot escape liability for severe injuries it knew or should have known were the probable outcome of its actions simply because no prior guest suffered the same injury.

The court concludes a genuine question of material fact exists as to the probability of I.R.'s injury. Plaintiffs' theory of the case, if believed by the jury, could establish probability. The jury could find defendant deliberately provided I.R. with a torn tube it knew would likely stop on the slope and knowingly failed to provide staging. The jury could find this confluence of events made I.R.'s injury probable, as opposed to merely possible. Evidence that the majority of prior guests were not injured on the tubing slope may be offered to the jury, but it does not establish as a matter of law that plaintiffs' gross negligence claim

must be dismissed for lack of probability.   Defendant's fourth objection is overruled.

### 5.      Lack of staging

The magistrate judge concluded plaintiffs' theory of the case established the essential elements of gross negligence.   (Docket 43 at pp. 16-17).   This holding necessarily endorsed plaintiffs' theory that defendant's alleged lack of staging on the tubing slope could contribute to a finding of gross negligence. Defendant argues "the mere allegation" it "failed to properly staff the top of the tube hill" is insufficient, as a matter of law, to establish the level of danger required for a gross negligence claim.   (Docket 46 at p. 9).

If plaintiffs asserted their gross negligence claim is premised solely on a lack of staging, the court might agree with defendant's objection.   However, it is clear plaintiffs allege the lack of staging *coupled with* the provision of torn tubes likely to stall on the tubing slope created the severe danger necessary for gross negligence.   Highlighting one component of plaintiffs' theory in isolation and then claiming the theory fails as a matter of law is disingenuous and misleading. The magistrate judge correctly declined to evaluate plaintiffs' theory in this manner and the court likewise declines defendant's invitation to do so.

Defendant also asserts the snow tubing industry standard of care does not require staging.   (Docket 46 at p. 9).   Breaching the industry standard of care is not an element of gross negligence.   South Dakota Civil Pattern Jury Instruction 20-50-10.   Evidence regarding the industry standard of care does not establish,

as a matter of law, that plaintiffs' gross negligence claim is unviable. A jury could well accept that defendant's failure to stage the tubing slope does not constitute conduct likely to injure guests. At the summary judgment stage, however, the court need only determine whether a genuine dispute of material fact exists. That bar is easily met here. Plaintiffs' theory of the case, if accepted by the jury, constitutes gross negligence. Accordingly, defendant's fifth objection is overruled.

### C.    Assumption of risk

The magistrate judge concluded the question of whether plaintiffs assumed the risk of I.R.'s injury was one for the jury. (Docket 43 at p. 20). Defendant contends this holding was error because plaintiffs had constructive knowledge of the risk of injury. (Docket 46 at pp. 10-12). However, the magistrate judge also noted it is uncertain under South Dakota law whether assumption of risk is even a defense to gross negligence. (Docket 43 at pp. 17-19). The parties unhelpfully fail to grapple with this antecedent question of law controlling the availability of the assumption of risk defense in their responses to the R&R.

Like the magistrate judge, the court will decline at this stage of the litigation to determine whether assumption of risk is a defense to gross negligence. The question is potentially dispositive and the court does not have the benefit of the parties' briefing. Should this case proceed to a jury trial, the court will require briefing on this question before allowing defendant to present

its assumption of risk defense to the jury.    In the meantime, the court will assume the assumption of risk defense is available for purposes of resolving defendant's summary judgment motion on this point.

"[C]onstructive knowledge may only be imputed for dangers recognizable in the exercise of ordinary common sense and prudence. . . . Such a danger must be obvious, and a person has constructive knowledge of a risk only if it is plainly observable so that anyone of competent faculties is charged with knowledge of it." Jensen, 907 N.W.2d at 823 (quotations and citations omitted).    Defendant notes plaintiffs completed approximately 20 separate runs down the tubing slope and observed tubers entering the slope before others had exited, due to the lack of staging.    (Docket 46 at pp. 10-12).    Plaintiffs were also aware of the risk of injury caused by snow tubing, including the risk of head injury.    Id. at p. 12. Defendant combines the facts to argue plaintiffs had constructive knowledge of the risk of mid-slope collisions before they allowed I.R. to tube by herself on her final run.    Id.

This argument again isolates one portion of plaintiffs' theory of the case. Plaintiffs have admitted facts showing they were aware of the lack of staging on the tube slope, but there is no evidence plaintiffs were aware of the possibility I.R.'s torn tube would stop mid-slope, creating a higher risk of collision.    In fact, the parties agree plaintiffs weren't aware I.R.'s tube was torn before the collision. (Docket 31 at ¶ 51).    Plaintiffs cannot be deemed to have constructive knowledge

of the risk I.R.'s torn tube would cause her to stop on the slope, raising the risk of collision, when they did not know her tube was torn.

Whether plaintiffs "had actual . . . knowledge of the risk" of I.R.'s injury, "appreciated its character," and "voluntarily accepted the risk" are all questions of fact for the jury. Jensen, 907 N.W.2d at 820. Defendant's argument plaintiffs had constructive knowledge is fatally undermined by undisputed facts. Assuming the defense is available at all, it will be decided by the jury. Defendant's sixth objection is overruled.

## IV. Conclusion

In plaintiffs' view of this case, defendant knowingly made torn tubes with a tendency to get stuck on the tubing slope available to small children and deliberately failed to staff the tubing hill with a staging employee to prevent collisions with stopped tubers, knowing such collisions would be probable. Plaintiffs sufficiently support their theory to create a genuine dispute of material fact. If accepted by the jury, this version of the facts establishes gross negligence. Accordingly, the court holds summary judgment is not appropriate on plaintiffs' gross negligence claim. Genuine questions of material fact remain as to defendant's assumption of risk defense and the court likewise denies

summary judgment on that issue.   The R&R is adopted to the extent it is consistent with this order.[5]

## ORDER

For the reasons given above it is

ORDERED that defendant's objections to the report and recommendation (Docket 46) are overruled.

IT IS FURTHER ORDERED that the report and recommendation (Docket 43) is adopted to the extent it is consistent with this order.

IT IS FURTHER ORDERED that defendant's motion for summary judgment (Docket 21) is granted in part and denied in part as described in this order.

Dated March 25, 2019.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE

---

[5]In their complaint, plaintiffs assert defendant negligently managed the tubing slope, causing I.R.'s injury.   (Docket 16 at ¶¶ 16-24).   Defendant argues the release plaintiffs signed on behalf of I.R. bars the negligence claim.   (Docket 23 at pp. 10-17).   Plaintiffs concede this point, "acknowledg[ing] that South Dakota case law protects Union Resort from liability for injuries caused by its ordinary negligence[.]"   (Docket 30 at p. 5).   The magistrate judge agreed with the parties and recommended the court grant summary judgment to defendant as to plaintiffs' negligence claim.   (Docket 43 at p. 10).   Neither party objects to the recommendation.   The court accordingly adopts the R&R on this matter. The court grants summary judgment to defendant as to plaintiffs' negligence claim.